**Paul J. BORDALLO, Plaintiff-Appellant,**

v.

**Carlos G. CAMACHO, Defendant-Appellee.**

No. 72–2259.

United States Court of Appeals,
Ninth Circuit.

March 9, 1973.

Howard G. Trapp, of Trapp, Gayle & Co., Agana, Guam, for plaintiff-appellant.

Vincent T. Perez, Atty. Gen., Richard D. Magee, Deputy Atty. Gen., William S. Amsbarg, Asst. Atty. Gen., Agana, Guam; Stuart R. Foutz, San Bruno, Cal., John Peter Saul, San Francisco, Cal., for defendant-appellee.

Kent Frizzell, Asst. Atty. Gen., Jacques B. Gelin, Henry J. Bourguinon, Attys., Dept. of Justice, Washington, D. C., amicus curiae.

Before CHAMBERS, ELY and WALLACE, Circuit Judges.

PER CURIAM:

■ On behalf of the Government of Guam, Governor Carlos G. Camacho executed a land exchange agreement with the United States of America on April 26, 1972. It called for the exchange of Guamanian public land in the area of Sella Bay for certain land on Guam owned by the United States. Paul Bordallo, a Guam senator, taxpayer and owner of land in the vicinity of Sella Bay, sued to enjoin the exchange until approval by the Guam legislature.[1] The trial court denied the request for preliminary and permanent injunctions and dismissed the action. We reverse.

■ The land in question was transferred by the United States to Guam in 1952.[2] The transfer document stipulated:

[I]f the *Government of Guam*, without the prior approval of the Secretary of the Interior, sells, leases or otherwise disposes of . . . said lands . . . title to such . . . land shall automatically revert to the United States. (Emphasis added.)

The Governor contended, and the district judge agreed, that the legislature cannot restrict the Governor in making his proposal to the Secretary of the Interior and disposing of the land. This overlooks the fact that the Guam legislature is a part of the "government of Guam," Organic Act of 1950, 48 U.S.C. § 1421a, and as such can put appropriate conditions on any request to the Secretary of the Interior which the law allows.

■ Clearly, the Organic Act allows the legislature to act in reference to this land so long as it does not do so inconsistently with acts of Congress.[3] In response to this mandate, the legislature has passed two statutes which require interpretation. In 1953, Guam Government Code § 13524 was adopted; it provides in part:

[T]he Governor of Guam may *transfer*, with the recommendation of the Land Transfer Board, any interest in the land of the government of Guam which he deems necessary for the functions of the United States of

---

1. We do not deem the United States to be an indispensable party to this litigation. Indeed, the amicus curiae brief filed by the United States in reponse to our request states at page 3:

 The Navy considers the present disagree-Legislature of Guam concerning the aument between the Governor and the thority to transfer these lands, to be a question internal to the affairs of Guam in which the United States should not intervene.

2. Transfer of Land to the Government of Guam, Department of Land Management Document No. 25219.

3. 48 U.S.C. § 1421f provides in part:
 (a) The title to all property, real and personal, owned by the United States and employed by the naval government of Guam in the administration of the civil af-

fairs of the inhabitants of Guam, including automotive and other equipment, tools and machinery, water and sewerage facilities, bus lines and other utilities, hospitals, schools, and other builldings, shall be transferred to the government of Guam within ninety days after August 1, 1950.
 (b) All other property, real and personal, owned by the United States in Guam, not reserved by the President of the United States within ninety days after August 1, 1950, *is placed under the control of the government of Guam*, to be administered for the benefit of the people of Guam, and *the legislature shall have authority*, subject to such limitations as may be imposed upon its acts by this chapter or subsequent Act of the Congress, to *legislate with respect to such property*, real and personal, in such manner as it may deem desirable. (Emphasis added.)

America . . . . (Emphasis added.)[4]

In 1970, Guam Government Code § 13525(c) was adopted:

Whenever lands owned by the United States of America are required by the government of Guam for a program or project specifically authorized by law, the Director of Land Management, with the approval of the Governor and the concurrence of the Legislature by resolution, may *exchange* such lands with lands owned by the government of Guam and cash as to equalize respective values of such properties. (Emphasis added.)

The only logical interpretation is that the legislature intended in 1970 to carve out of the general *transfer* authorization granted to the governor in 1953 those land *exchanges* specified in § 13525(c).

 This proposed exchange falls within the ambit of § 13525(c). Evidence indicated that the lands to be exchanged by the United States were required by Guam for a program or project authorized by law.[5] Therefore, §

---

4. § 13524 was amended in 1972 to read as follows:

Section 13524. United States agencies. Upon receipt of a request from an authorized representative of an agency of the government of the United States of America, the Governor of Guam may transfer, with the recommendation of the Land Transfer Board, and *with the concurrence of the Guam Legislature* by a resolution duly adopted by a majority of its members, any interest in land of the government of Guam which he deems necessary for the function of the United States of America and its agency. (Emphasis added.) Guam Pub.L.No.11–213, § 1 (Dec. 29, 1972).

5. The district judge made the following findings:

[T]hat the Government of Guam also has need for certain land and interests in land owned by the United States in Guam.

. . . . .

In consideration of the agreement by the Government of Guam to convey lands and interests in land in the Sella Bay area to the United States, the United States will execute a Joint Use Agreement for the use of certain facilities at the United States Naval Air Station, Agana, Guam, and a lease of certain non-excess lands in the Masso Reservoir area.

The United States of America and the Government of Guam under the Agreement have also agreed to enter into a joint use conservation plan for the Susa River area, including public use consistent therewith. The United States of America has also agreed to relinquish control to the Government of Guam of the Island-Wide Power System, a successful commercial operation.

. . . . .

Included in the Joint Use Agreement executed between the United States of America and the Government of Guam is the use of certain facilities at the United States Naval Air Station which are necessary to the efficient and safe operation of the Guam International Airport. The airport terminal and other facilities connected therewith are owned by the Government of Guam, but its operation must comply with certain basic standards necessary for efficiency and safety. The Federal Aviation Administration is charged by law for seeing that basic standards are complied with. The Guam International Airport is within the cognizance of the Federal Aviation Administration. At the request of the Government of Guam, the Honolulu Regional Office of the Federal Aviation Administration has undertaken studies, inspection and examination of the existing facilities at the Guam International Airport for the purpose of enabling Guam to be eligible for a grant from the United States, i. e., federal grant for airport facilities.

As a result of the studies, it is discovered that the apron and ramp areas utilized by commercial airlines are in very bad shape, fast approaching the unsafe standard, thus necessitating a daily inspection by the local agency of the Federal Aviation Administration.

By virtue of the Joint Use Agreement, the Government of Guam has obtained from the United States of America the necessary facilities and area space required to make Guam eligible under the federal airport grant. The immediate effect is that a little over one million dollars of federal grant on a matching basis is now available to Guam to develop the existing facilities at the Guam International Airport to meet the basic needs and standards of a sound and safe airport operation.

The Guam International Airport is the only access to Guam via commercial aircraft. It is the main traffic channel of tourists coming to Guam.

13525(c) applies, and the exchange must be made by the Director of Land Management subsequent to the approval of the Governor and the concurrence of Guam's legislature.

This matter is reversed and remanded to the district court for further proceedings consistent with this opinion.

CHAMBERS, Circuit Judge (concurring):

I concur in the decision. However, I read Section 13525(c) of the Guam Government Code as requiring the concurrence of the Legislature only when the Government of Guam initiates a land exchange and not, as here, where the impetus came from the United States. To some degree I think my view is confirmed by the Guam Legislature's action in 1972 in amending § 13524. (Guam Public Law 11–213 (1972)).